UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
CRANSTON/BVT ASSOCIATES,            )
LIMITED PARTNERSHIP,                )
                                    )
        Plaintiff,                  )
                                    )   C.A. No. 13-594 S
    v.                              )
                                    )
SLEEPY'S, LLC,                      )
                                    )
        Defendant.                  )
_____)

### ORDER

WILLIAM E. SMITH, Chief Judge.

This case involves a contract dispute between a landlord, Plaintiff Cranston/BVT Associates Limited Partnership ("BVT") and its former tenant, Defendant Sleepy's LLC ("Sleepy's"). Magistrate Judge Patricia A. Sullivan issued a Report & Recommendation ("R&R") (ECF No. 28) on the parties' cross-motions for summary judgment, recommending that both motions be denied. The parties each timely objected to portions of the R&R. For the reasons that follow, the Court OVERRULES the objections and ACCEPTS the R&R pursuant to 28 U.S.C. § 636(b)(1).

I.   Background

The R&R thoroughly recounts the underlying facts, and they need not be reproduced in detail here. In brief, the

parties dispute whether two emails between Sleepy's and Jay A. Shaw ("Shaw"), Senior Vice President/Director of Leasing for First Hartford Reality Corp., BVT's partial owner and the manager for the property at issue, amended a commercial lease.  The first email, dated May 30, 2013, involved Sleepy's request to extend the deadline for providing notice of non-renewal of the lease; the second email, dated June 28, 2013, involved Sleepy's request to convert the lease to a month-to-month tenancy.

At the center of the dispute is the proper interpretation of the lease's amendment provision.  It states in relevant part that:

> No subsequent alteration, amendment, change or addition to this lease shall be binding upon landlord or tenant unless reduced to writing and signed by them.

(Pl.'s Objection 2, ECF No. 31-1.)  BVT argues that the parties' prior dealings make this provision unambiguous. According to BVT, amendments to the lease in 2007, 2009 and 2011 clearly establish that the term "writing" meant typewritten documents, and that "signed by them" meant handwritten signatures between BVT's president, Neil Ellis ("Ellis") and Sleepy's president, David Acker ("Acker").[1]

---

[1] BVT also points to the parties' course of dealing with regard to other lease agreements between the parties on other properties.  As Magistrate Judge Sullivan noted,

2

Since the emails did not conform with BVT's interpretation of the amendment provision, BVT contends that the lease automatically renewed for an additional five year term on November 30, 2013.

Sleepy's presents a vastly different interpretation of the lease's amendment provision and the parties' prior dealings. It first argues that the emails actually conform with the lease's amendment provision since they were a writing signed by Shaw, an individual who had previously approved a lease amendment. In the alternative, Sleepy's asserts that its prior dealings with Shaw made its reliance on his emails reasonable and binding on BVT.

When Sleepy's notified BVT in July 2013 of its intent to terminate the lease, BVT commenced this lawsuit. It alleged that Sleepy's breached its contract with BVT and sought a declaration that BVT's interpretations of the lease were correct. (ECF No. 3.) Sleepy's timely answered BVT's complaint and asserted two counter-claims – one alleged that BVT, not Sleepy's, breached the lease agreement; the other alleged that Sleepy's detrimentally relied on Shaw's emails and was entitled to damages under

---

the ambiguity surrounding the course of dealings relating to the Cranston lease negates the need to determine which, if any, of these leases are relevant to this case at the summary judgment stage. (R&R 5 n.4, ECF No. 28.)

the doctrine of promissory estoppel.  (ECF No. 7.)  After considering the parties' cross-motions for summary judgment (ECF Nos. 18 and 22), Magistrate Judge Sullivan issued her R&R recommending denial of both parties' motions.  The parties objected and this Court considers each objection in turn.

II.  BVT's Objections to the R&R[2]

BVT first objects to the R&R's finding that "there is an issue of fact which precludes summary judgment as to the meaning of [the amendment provision] of the Lease."  (Pl.'s Objection 1, ECF No. 31-1.)  In support of its objection, BVT argues that the parties' prior dealings demonstrate the only way to amend the lease was with typewritten documents that were hand-signed by the parties' presidents.  (Id. at 9.)

As Magistrate Judge Sullivan aptly noted, BVT's prior course of dealing argument is "somewhat illogical."  (R&R 18, ECF No. 28.)  Taking the facts in the light most favorable to Sleepy's, the parties did not execute lease amendments to the Cranston property in a consistent, unambiguous manner.  The parties' first amendment in 2007 followed BVT's interpretation of the lease; both Acker and

---

[2] The Court reviews de novo those portions of the R&R to which both Sleepy's and BVT object.  28 U.S.C. § 636(b)(1).

Ellis hand-signed a typewritten document. (R&R 5, ECF No. 28.)  The next amendment, in 2009, however, was signed by Shaw, not Ellis, on behalf of BVT and transmitted electronically via fax.  (Id. at 5-6.)  Then, in a 2011 amendment, the parties reverted to having Acker and Ellis sign the amendment but transmitted the amendment via email as an electronic attachment.  (Id. at 6.)  Further, the 2011 amendment stated that "electronic signatures shall be deemed original signatures," a statement whose meaning and application to future lease amendments the parties dispute. (Id.)  Based on these facts, and contrary to BVT's assertions, the only consistency or clarity in these amendments is their lack of consistency and clarity.  A jury could accept BVT's interpretation of the amendment provision; or it could credit Sleepy's interpretation — that the emails were valid lease amendments because they were a writing signed by Shaw, the same individual who signed the 2009 amendment.  Questions of fact abound relating to whether the emails amended the lease, precluding summary judgment.

BVT next argues that, even if the emails could amend the lease, they did not in this case because they lacked consideration.  (Pl.'s Objection 16, ECF No. 31-1.)  BVT's argument, however, is premised on resolving this matter's

5

key factual dispute in its favor — that the emails did not amend the lease. (See id. at 17-18.) If a jury were to resolve this dispute in Sleepy's favor, the consideration for the alleged email amendments would, at the very least, present another question of fact for the jury. (See Def.'s Reply to Pl.'s Cross Mot. for Summ. J. 10-11, ECF No. 25.) BVT's consideration argument does not entitle it to summary judgment.

Finally, BVT argues that the emails could not have amended the lease as a matter of law because they lacked valid electronic signatures. (Pl.'s Objection 19-22, ECF No. 31-1.) BVT claims that Shaw's name at the end of the emails did not constitute an "electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record" as required under Rhode Island's Uniform Electronic Transaction Act. R.I. Gen. Laws § 42-127.1-2(8). This argument fails. Whether electronic or otherwise, "[t]he law demands only demonstration of a person's intent to authenticate a document as [his or her] own in order for the document to be signed." Hamdi Halal Mkt. LLC v. United States, 947 F. Supp. 2d 159, 164 (D. Mass. 2013) (considering a definition of electronic signature in federal statute that is identical to R.I. Gen.

6

Laws § 42-127.1-2(8)). Accordingly, so long as a party intends to sign an email with his or her signature, "a typed name on an electronic document suffices as a signature." Hamdi, 947 F. Supp. 2d at 164. Magistrate Judge Sullivan correctly noted that whether Shaw intended to sign the emails is a disputed fact to be resolved by the fact finder. (R&R 15, ECF No. 28.) BVT is not entitled to summary judgment on this alternative basis.

III. Sleepy's Objections to the R&R

Sleepy's only objects to Magistrate Judge Sullivan's denial of summary judgment as to its promissory estoppel claim. It does not object to the recommendation relating to its contract claim. (Def.'s Objection 1, ECF No. 29.) The Court, thus, adopts Magistrate Judge Sullivan's recommendations relating to the contract claim without further comment. See LR Cv 72(d)(1). As to Sleepy's promissory estoppel claim, this Court adopts Magistrate Judge Sullivan's recommendation as clarified below.

Magistrate Judge Sullivan bases her recommendation on the significant disputes between the parties relating to their prior course of dealing. (R&R 18, ECF No. 28.) She held that these past practices created a question of fact as to at least one element — whether Shaw's emails

7

constituted a clear, unambiguous promise.[3]  (Id.) Magistrate Judge Sullivan's conclusion is correct; the parties' prior course of dealings creates questions of fact as to the clarity of the emails. (See id. at 16.) This same conduct, however, also creates a question of fact as to the second element of Sleepy's promissory estoppel claim — the reasonableness of Sleepy's reliance on Shaw's emails. On the one hand, BVT has presented evidence showing that the parties often amended their lease agreement through typewritten, hand-signed documents, not through informal email. (See Pl.'s Objection 3, ECF No. 31-1.) If a jury credited this evidence, it could find that Sleepy's should have known better than to rely on Shaw's emails. On the other hand, Sleepy's has presented evidence that it typically dealt with Shaw in negotiating lease amendments (see Def.'s Objection 2, ECF No. 29-1); and that the parties had, arguably, authorized electronically signed documents (R&R 6, ECF No. 28). A jury could side with Sleepy's and determine that Shaw's emails were both clear and that Sleepy's reliance on them was reasonable.

---

[3] Filippi v. Filippi, 818 A.2d 608, 626 (R.I. 2003) clarified the elements of promissory estoppel under Rhode Island law: "To establish promissory estoppel, there must be: 1. A clear and unambiguous promise; 2. Reasonable and justifiable reliance upon the promise; and 3. Detriment to the promisee, caused by his or her reliance on the promise."

Questions of fact clearly remain relating to multiple elements of Sleepy's promissory estoppel claim, precluding summary judgment.

Sleepy's tries to avoid the factual disputes in its promissory estoppel claim with three objections to Magistrate Judge Sullivan's recommendation. Its primary objection seems to be that there is no evidence "to indicate that Sleepy's would have or should have known that it could not rely on Shaw." (Def.'s Objection 9, EFC No. 29-1.) As detailed above, this assertion is incorrect. There is ample evidence that the prior course of dealing between the parties is anything but clear, raising questions of fact as to the clarity of Shaw's emails and the reasonableness of Sleepy's reliance on the emails.

Sleepy's next urges this Court to reject Magistrate Judge Sullivan's recommendation because Magistrate Judge Sullivan overlooked the fact that Shaw had apparent authority to bind BVT and Sleepy's, thus, Sleepy's reasonably relied on Shaw's emails. (Def.'s Objection 7, ECF No. 29-1.) Sleepy's assertion, again, is incorrect. Magistrate Judge Sullivan considered and correctly determined that questions of fact existed relating Shaw's apparent authority. (R&R 14, ECF No. 28.)

Finally, Sleepy's argues that Magistrate Judge Sullivan erred because she based her recommendation on internal inconsistencies in Shaw's testimony and between Shaw's testimony and the emails. To be sure, clear contradictions between prior sworn testimony and subsequent affidavits cannot create a question of fact at summary judgment. But the allegedly contradictory testimony here does not constitute sworn affidavits; it comes from contemporaneous deposition testimony and disputes surrounding the meaning of two emails. Crediting and discrediting this type of evidence generally rests with the jury. See Secrest v Merck, Sharp & Dohme Corp. (In re Fosamax Prods. Liab. Litig.), 707 F.3d 189, 194 n.4 (2d Cir. 2013) ("In the ordinary case where a district court is asked to consider the contradictory deposition testimony of a fact witness, or where the contradictions presented are not 'real, unequivocal, and inescapable,' the general rule remains that 'a district court may not discredit a witness's deposition testimony on a motion for summary judgment, because the assessment of a witness's credibility is a function reserved for the jury.'" (quoting Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010))). And regardless, as detailed above, questions of fact remain as to whether Sleepy's reasonably relied on

Shaw's emails based on the parties' past practices.[4] Magistrate Judge Sullivan did not err in recommending denial of Sleepy's motion for summary judgment.

III. Conclusion

For the foregoing reasons, both BVT and Sleepy's objections are OVERRULED and the R&R is ACCEPTED pursuant to 28 U.S.C. § 636(b)(1). Both parties' Motions for Summary Judgment are DENIED.

IT IS SO ORDERED.

/s/ William E. Smith

William E. Smith
Chief Judge
Date:  September 30, 2015

---

[4] In its Objection, Sleepy's highlights deposition testimony in which Shaw appears to assert that he intended Sleepy's to rely on his emails. (Def.'s Objection 9-10, EFC No. 29-1.) Sleepy's emphasis on this deposition testimony is misplaced. The question is not what Shaw intended; it is whether Shaw's emails were clear and whether Sleepy's reasonably relied on them. As detailed above, the parties' prior course of dealing creates questions of fact as to both of these elements of Sleepy's promissory estoppel claim.

11